## No. 13,971.

HAEFELI *v.* AHLSTRAND ET AL.
(73 P. [2d] 1378)

Decided May 17, 1937.   On rehearing original opinion modified and adhered to October 25, 1937.
Rehearing denied November 15, 1937.

Mr. HERBERT E. MANN, for plaintiff in error.

Mr. THOMAS A. NIXON, Mr. WILLIAM R. BAAB, for defendants in error.

*En Banc.*

MR. JUSTICE BAKKE delivered the opinion of the court.

THIS is an action by plaintiff in error against defendants in error to recover damages in the sum of $825, and for body judgment. On trial of the issues before a jury, judgment of nonsuit was entered against the plaintiff at the close of his case, on motion of the defendants. Several assignments of error are made, but, for the purpose of this opinion, it is only necessary to consider the one based on the sufficiency of the evidence and the one on the refusal of the trial court after the close of the plaintiff's case to permit an amendment of the plaintiff's complaint to conform to the evidence.

The parties will be referred to as they were in the trial court.

Plaintiff, an optometrist, dabbled in real estate as a hobby, and had been engaged in various real estate dealings over a period of years with defendant Hood to their mutual advantage. The defendants, both of whom were real estate brokers in the city of Greeley, used the office of defendant Ahlstrand. Defendant Hood occupied space therein and he divided his commissions with Ahlstrand in payment of rent. The evidence discloses that both defendants were independent contractors, rather than mutual agents or partners.

During the fall of 1933, one James Watson, being the owner of a ten acre tract in Greeley, listed it for sale with Ahlstrand for $1,875, subject to an encumbrance of $1,500. Subsequently said tract was one of several pieces of real estate which Ahlstrand had given to Hood to try and sell. Hood spoke to plaintiff on several occasions about buying it and plaintiff went out and looked at the tract. During the forenoon of March 7, 1934, Ahlstrand, at the request of defendant Hood and upon the payment by him of $50, secured an option from Watson for the purchase of the tract for $1,898, subject to the $1,500

encumbrance, said option being in favor of "C. H. Hood or assigns." On March 12th, Hood sold the tract to Abe Winograd, and on March 13th, the option, which was secured by defendant Hood on March 7th, was exercised, and Watson conveyed the tract to Winograd who went into possession.

During all of these negotiations the plaintiff had an equity in a residence property which he was anxious to dispose of, and Hood was also trying to sell this for the plaintiff. On the 16th of March, Hood, believing that the plaintiff was still interested in buying the tract, went to him and said that he, Hood, had a compromise offer of $800 and that Winograd would take $200 cash and plaintiff's note for $600, which proposition was accepted by plaintiff, he giving Hood a check for $200 and a note for $600.

Plaintiff's contention is that the defendants, cooperating together, conspired to defraud him by having Hood buy the tract from the original owner at a figure considerably less than that quoted to plaintiff, and that they used Winograd as a "straw" man, through whom they could convey title for the purpose of the sale to plaintiff.

It is impossible to determine just what kind of an action the plaintiff is seeking to maintain. There seems to be a mixture of conspiracy, fraud and deceit, breach of contract, and breach of trust. The trial court finally determined that the action was one in fraud and deceit and dismissed it for failure of proof. Such determination was reached after hearing all of the testimony the plaintiff had to offer. There is no showing here that the trial court abused its discretion in not letting the case go to the jury, and its judgment, in the absence of such showing, will not be disturbed on review.

It is clear from the evidence that there never was any meeting of the minds, as far as the plaintiff and defendant Hood were concerned, until the sale to plaintiff was consummated on March 16th, at which time he was specifically advised that Winograd was the owner.

Plaintiff relies with considerable urgency on an alleged confession made by Hood to him in June, and the fact that he, Hood, cried while making this confession. This may have been the remorse of a man who indulged in sharp practice to take advantage of a friend of many years, but, under the circumstances in this case, it does not constitute a basis for cause of action.

The maintenance of this alleged cause of action depended largely upon the legitimacy of the deal with Winograd. The failure of the plaintiff to invoke the testimony of Winograd can only be taken to mean that he must have been satisfied that there was nothing irregular about defendant Hood's deal with Winograd.

The evidence clearly discloses that on March 16th plaintiff knew that Hood was representing Winograd also, consequently we must assume he assented thereto, and he is not entitled to recover any commission or profit which Hood and Winograd may have made on their deal. *Way v. Smith,* 73 Colo. 348, 215 Pac. 868.

Cases cited by plaintiff's counsel do not assist him, because they are readily distinguishable on the facts from the present case.

The court did not err in refusing to permit the amendment to the plaintiff's complaint after the close of his case, because all of the plaintiff's evidence was in and it was clearly insufficient to support a judgment in any amount for him.

The record discloses that the evidence was insufficient to establish a cause of action under any of the supposed theories that the plaintiff may have had in mind, and a judgment of nonsuit was properly entered. 18 C. J. 1147, *Goodstein v. Silver Plume Mines Co.,* 79 Colo. 269, 245 Pac. 714, and *Elliott v. Parr,* 100 Colo. 204, 66 P. (2d) 819.

Judgment affirmed.

Mr. Justice Bouck and Mr. Justice Young dissent.

Mr. Justice Bouck, dissenting.

There is but one question involved in this case, namely, Was there before the trial court, at the time the nonsuit was granted, evidence which, when given the most favorable effect from the standpoint of the plaintiff, was sufficient to make out a prima facie case? It matters nót what we may technically call the action, whether an action of deceit, or one in quasi contract on the ground of unjust enrichment, or something else. Reading the record to ascertain whether it presents evidence which thus favors the plaintiff, I respectfully submit that the plaintiff has met the required test, and that it was the function of the jury—not the function of the trial judge—to weigh the evidence and to determine the credibility of the witnesses.

The opinion herein states some of the evidence, but not all. I think a careful reading of the record discloses that the relation between the plaintiff and the defendant Hood, a licensed real estate broker, was one of principal and agent;.that if the evidence favorable to the plaintiff were believed by the proper fact-finding body—not necessarily by the trial judge—Hood made false representations as to the amount for which Watson, the owner, was willing to sell the real property involved, leading the plaintiff to believe that the agent Hood could not procure the property for a lower price; that Hood thereupon went to the owner and procured the property for a much lower price without informing the plaintiff of his action; that —after an intermediate conveyance to one Winograd— Hood then sold the property to the plaintiff at a substantially advanced price, thus himself profiting contrary to the vital principles recognized as governing the duties of an agent to his principal.

It is immaterial that the evidence favorable to the plaintiff may have been in some respects contradicted by the two defendants when they were called for statutory cross-examination. Such contradiction would, nevertheless, leave ample substantial evidence in favor of the

plaintiff, so as to require submission of the case to the jury. Whether, if the case were to go to the jury, the jury would find that the plaintiff failed to sustain the burden of proving his case by a preponderance of the evidence, is a question concerning the duties of jurors, not the duties of the trial judge.

This court's pronouncement in *Pace v. Cline,* 59 Colo. 138, 147 Pac. 672, a case startlingly similar to the one at bar, seems not only enlightening and persuasive, but conclusive here.

We are not bound by the trial judge's view that the present action must be regarded as one for damages on account of fraud and deceit. I think the complaint stated, and the evidence tended to prove, a clearly sufficient cause of action in assumpsit on well-recognized grounds, and this court should have so held.

In an analogous case, *Sandoval v. Randolph,* 222 U. S. 161, 162, 56 L. Ed. 142, 143, 32 Sup. Ct. 48, 49, the Supreme Court of the United States declared:

"The action was in debt to recover this excess over the cost of the property, as money had and received for the use of the plaintiff.

"It would be a great scandal if a principal thus betrayed by his agent might not declare in assumpsit without relying upon fraud and deceit in an action for damages. And so the court below held was the law, and that such was the action, notwithstanding the conduct of the Sandovals was characterized as deceitful and fraudulent.

"Neither is it now contended that an agent who makes a secret profit in the execution of his agency may not be compelled to disgorge and required to do so in an action upon an implied promise. * * *

"What they do say is, that as a matter of law there was no relation of principal and agent, since there was conclusive evidence that they were themselves the owners of the property at the time they agreed to act for the plaintiff in buying it. Upon this hypothesis it is said

302

that there is no evidence to support a judgment grounded upon their liability for a breach of duty as agents, since one may not act as agent for the buyer in the sale of property of which he is himself the sole owner.

"But the finding of fact was that the defendants, after agreeing to purchase in behalf of the plaintiff, *'and in pursuance of that agreement,* purchased the said mining property,' etc. This finding is a flat contradiction of the claim that they were the owners when they agreed to represent the plaintiff in buying the property."

As I think, the trial judge committed prejudicial error by taking the plaintiff's *prima facie* case from the jury. This court has obviously approved this assumption by the trial judge of fact-finding powers. I therefore dissent from the decision and opinion of the majority herein.

MR. JUSTICE YOUNG concurs in this opinion.